UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at PIKEVILLE

JARROD MARQUEL JOHNSON,

    Plaintiff,

v.

J. SLONE, et al.,

    Defendants.

Civil Action No. 7:16-274-KKC

**MEMORANDUM OPINION
& ORDER**

\*\*\* \*\*\* \*\*\* \*\*\*

Plaintiff Jarrod Marquel Johnson is an inmate formerly confined at the United States Penitentiary-Big Sandy ("USP-Big Sandy") in Inez, Kentucky. Proceeding without an attorney, Johnson filed a civil rights action against federal officials pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). [R. 1]. Defendants Jennifer Slone, Burney Borden, and Trina Burchett have filed a motion to dismiss or, in the alternative, motion for summary judgment. [R. 15]. Johnson has filed a response [R. 17] and Defendants have filed a reply [R. 19]. Without seeking the Court's permission to do so, Johnson has filed a sur-reply [R. 20].[1] Thus, this matter has been fully briefed and is ripe for review.

**I.    Factual Background**

The events giving rise to Johnson's allegations in his Complaint occurred while he was housed in USP-Big Sandy in September 2015. According to Johnson, he submitted several written requests to his counselor, Defendant Slone, requesting that his cellmate be moved because they

---

[1] The Court's Local Rules do not contemplate or permit the filing of a sur-reply, LR 7.1(c), (g), and hence such filings are not permitted absent leave of the Court. Such leave is only granted to address arguments or evidence raised for the first time in a reply. *Key v. Shelby County*, 551 F. App'x 262, 265 (6th Cir. 2014) (citing *Seay v. Tennessee Valley Authority*, 339 F.3d 454, 481 (6th Cir. 2003)). Defendants did not raise any new arguments in their reply, and Johnson's sur-reply simply reasserts the arguments he made in his initial response. Thus, the filing of a sur-reply was neither necessary nor appropriate.

were "having problems." These requests were denied. Johnson further alleges that, around this same time, his cellmate also approached an unidentified officer from the Special Investigative Services ("SIS") department, informed the officer of the problems he and Johnson were having, and requested to be moved. This request was also denied. Johnson alleges that he again approached Defendant Slone and requested to be moved "to prevent a problem from occurring." However, this request was denied. [R. 1 at p. 9].

Johnson then alleges that, on September 6, 2015, he was beaten in the head with a metal lock by his cellmate. He claims that he was escorted to medical, where he informed Defendant Nurse Burchett about the seriousness of his injuries, but rather than examining him, she told him to put in a written request to be seen by medical. He alleges that he was then escorted to a cell in the Special Housing Unit ("SHU") without medication or anything else to help with the physical pain from the assault. He alleges that, despite submitting written requests to be seen about his physical condition, he was not seen by medical for about four weeks. He claims that, when he was seen on October 19, 2015, although he was prescribed him 800 mg of Ibuprofen, he was never given anything for his vision in his right eye or the blurriness or dizziness when standing. [R. 1 at p. 9-10].

Based on these allegations, Johnson claims that Defendants Slone, Borden, and the unidentified SIS officer violated his Eighth Amendment rights by failing to protect him from the alleged assault after he requested to be moved to a different cell because of the "problems" he and his cellmate were having. Johnson also alleges that Nurse Burchett violated his Eighth Amendment rights based on his allegations of inadequate medical care. [R. 1 at 9-11]. Defendants have filed a motion to dismiss or, in the alternative, motion for summary judgment, arguing that Johnson's complaint should be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim

for violation of the Eighth Amendment and that Defendants are entitled to qualified immunity. [R. 15].

## II. Standard

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the sufficiency of the plaintiff's complaint. *Gardner v. Quicken Loans, Inc.*, 567 F. App'x 362, 364 (6th Cir. 2014). When addressing a motion to dismiss, the Court views the complaint in the light most favorable to the plaintiff and accepts as true all 'well-pleaded facts' in the complaint. *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014). Because Johnson is proceeding without the benefit of an attorney, the Court reads his complaint to include all fairly and reasonably inferred claims. *Davis v. Prison Health Servs.*, 679 F.3d 433, 437-38 (6th Cir. 2012).

Here, Defendants moved both to dismiss and for summary judgment, attaching and relying upon declarations extrinsic to the pleadings in support of their motion. [R. 15]. Thus, the Court will treat the defendant's motion to dismiss the complaint as a motion for summary judgment under Rule 56. Fed. R. Civ. P. 12(d); *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F. 3d 1102, 1104 (6th Cir. 2010). *See also Ball v. Union Carbide Corp.*, 385 F.3d 713, 719 (6th Cir. 2004) (where defendant moves both to dismiss and for summary judgment, plaintiff is on notice that summary judgment is being requested, and the court's consideration as such is appropriate where the nonmovant submits documents and affidavits in opposition to summary judgment).

A motion under Rule 56 challenges the viability of another party's claim by asserting that at least one essential element of that claim is not supported by legally-sufficient evidence. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986). A party moving for summary judgment must establish that, even viewing the record in the light most favorable to the nonmovant, there is no genuine dispute as to any material fact and that the party is entitled to a judgment as a

matter of law. *Loyd v. St. Joseph Mercy Oakland*, 766 F.3d 580, 588 (6th Cir. 2014). The burden then shifts to the nonmoving party to "come forward with some probative evidence to support its claim." *Lansing Dairy, Inc. v. Espy,* 39 F.3d 1339, 1347 (6th Cir.1994). However, if the responding party's allegations are so clearly contradicted by the record that no reasonable jury could adopt them, the court need not accept them when determining whether summary judgment is warranted. *Scott v. Harris*, 550 U.S. 372, 380 (2007). The Court must grant summary judgment if the evidence would not support a jury verdict for the responding party with respect to at least one essential element of his claim. *Johnson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

**III.    Analysis**

**A.    Claims Against Defendant Borden**

Defendants argue that Johnson's claims against Defendant Borden[2] are based solely on Borden's position as Slone's supervisor and, accordingly, must be dismissed. [R. 15-1 at p. 11-12]. Johnson does not dispute this characterization of his claims against Borden, but rather argues that "[t]he claims against Borden are that he failed [to] supervise properly and failed to establish [procedures] to where he would be made aware of on-going problems and intervene, so the failure to properly supervise constitutes deliberate indifference." [R. 17 at p. 8].

However, while *Bivens* expressly validated the availability of a claim for damages against a federal official in his or her individual capacity, an officer is only responsible for his or her own conduct. *Ashcroft v. Iqbal*, 556 U.S.662, 676-677 (2009). *See also Ziglar v. Abbasi*, 137 S.Ct. 1843, 1860 (2017). The mere fact of supervisory capacity is not enough: an official must be personally involved in the conduct complained of because *respondeat superior* is not an available theory of liability. *Polk County v. Dodson*, 454 U.S. 312, 325-26 (1981).

---

[2] Although Johnson identified Borden in his Complaint as "Unit Manager Mr. Boyden," Defendants' Motion clarifies that his name is Burney Borden.

4

Here, Johnson does not allege that Borden had any personal involvement in the incidents allegedly giving rise to his claims. At most, he suggests that, as a supervisor, Borden is responsible for the conduct of his employees, such that, if Borden is not notified of "on-going problems" and, therefore, fails to intervene, he has failed to properly supervise his employees. [R. 17 at p. 8]. However, such a claim seeks to impose liability upon Borden for his employees' conduct, a form of sweeping supervisory liability which is unavailable in a *Bivens* action: "[i]n a § 1983 suit or a *Bivens* action - where masters do not answer for the torts of their servants - the term 'supervisory liability' is a misnomer." *Ashcroft*, 556 U.S. at 677 (2009). *See also Ziglar*, 137 S.Ct. at 1860. Thus, Johnson fails to state a claim against Borden for which relief may be granted.

### B. Failure to Protect Claim

Turning to Johnson's failure to protect claim, Johnson alleges that Defendants Slone and the unidentified "John Doe" SIS Officer failed to protect him from an alleged assault on him by his cellmate, notwithstanding his request to move cells prior to the assault.[3] "A prison official's "deliberate indifference" to a substantial risk of serious harm to an inmate violates the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (citations omitted). However, "not...every injury suffered by one prisoner at the hands of another...translates into constitutional liability for prison officials responsible for the victim's safety." *Id*. at 834. The Supreme Court has instructed that:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

---

[3] The fact that the Defendant "SIS John Doe" remains unidentified is reason enough to dismiss Johnson's purported claim against him. *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) (affirming district court's dismissal of "John Doe (Unknown Legal Name), Guard, Charlotte Correctional Institute"). However, as this claim is substantively the same as Johnson's claim against Slone, Johnson's claim against the SIS Officer fails for the same reasons that Johnson's claim against Slone fails.

*Id*. at 837.

Thus, to state a viable claim for failure to protect, an inmate must allege that a prison official: 1) was actually aware of a substantial risk that the plaintiff would suffer serious harm; and 2) knowingly disregarded that risk. *Farmer*, 511 U.S. at 837.

Here, Johnson argues that Slone was deliberately indifferent to the risk of harm to him because she denied his written requests that his cellmate be moved to a different cell because he and his cellmate were "having problems." [R. 1 at p. 9]. He also alleges that he approached her on a different occasion and requests to be moved "to prevent a problem from occurring." [*Id*.]. However, such generalized and vague statements about "not getting along" with one's cellmate do not give rise to an inference that a substantial risk of serious harm to a prisoner exists. *Lynn v. Melton*, No 2:15-cv-0003, 2015 WL 403977 at *4 (M.D. Tenn. Jan 28, 2015)(allegation that prisoner had reported that he and his cellmate were "unable to get along" insufficient to state a claim that cellmate posed an objectively serious risk of harm to prisoner and that officials deliberately disregarded that risk). As in *Lynn*, notably absent here are any allegations that Johnson's cellmate had actually threatened him with physical harm.

Moreover, Johnson does not allege facts showing that either Slone or the SIS Officer to whom Johnson's cellmate complained actually drew an inference that there was a substantial risk of serious harm to Johnson and then knowingly disregarded that risk. Because Johnson fails to allege that that there was a substantial risk of serious harm to him that Slone and/or the SIS Officer were both aware of and knowingly disregarded, he has failed to state an Eighth Amendment "failure to protect" claim. Accordingly, this claim will be dismissed pursuant to Rule 12(b)(6).

### C.     Claim of Inadequate Medical Care

Turning to Johnson's claim of inadequate medical care against Nurse Burchett, the Eighth Amendment "forbids prison officials from 'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference' toward [his] serious medical needs." *Blackmore v. Kalamazoo County*, 390 F. 3d 890, 895 (6th Cir. 2004) (*quoting Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). A plaintiff asserting deliberate indifference to his serious medical needs must establish both the objective and subjective components of such a claim. *Jones v. Muskegon Co.*, 625 F. 3d 935, 941 (6th Cir. 2010). The objective component requires the plaintiff to show that the medical condition is "sufficiently serious," *Farmer*, 511 U.S. at 834, such as one "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F. 3d 510, 518 (6th Cir. 2008) (citations omitted). The subjective component requires the plaintiff to show that prison officials actually knew of a substantial risk of harm to the plaintiff's health but consciously disregarded it. *Cooper v. County of Washtenaw*, 222 F. App'x 459, 466 (6th Cir. 2007); *Brooks v. Celeste*, 39 F. 3d 125, 128 (6th Cir. 1994).

Here, Johnson's Eighth Amendment claim is based on his allegation that, after the attack on him on September 6, 2015, he was escorted to medical, but Burchett refused to examine him, instead telling him to put in a written request to be seen by medical. He then claims that he was put in the SHU without medication or any other treatment to help with pain. He further alleges that, despite submitting written requests to be seen, he was not seen by medical for about four weeks. Once he was seen, he alleges that, although he was prescribed him 800 mg of Ibuprofen, he was never given anything for his vision in his right eye or the blurriness or dizziness when standing. [R. 1 at p. 9-10].

However, Johnson's allegations of a complete lack of medical examination and/or treatment after the assault are directly refuted by his medical records. Although Johnson alleges that Burchett refused to examine him, his medical records show that she did, in fact, examine him on September 6, 2015 and that he said that he was "alright" but just his pride was hurt. [R. 15-2 at p. 5]. The record further shows that Burchett noted that Johnson had an elevated heart rate, but a regular rhythm with no distress. [*Id.*]. He also had an abrasion to the left side of the upper face and a small deviation of the nasal nares, but they were patent and bleeding was stopped with pressure. [*Id.* at p. 5-6]. An abrasion on his right hand on the outer thumb area was cleaned with saline and hydrogen peroxide and he was instructed to keep the areas clean and dry with soap and water. [*Id.* at p. 6]. At the time, he denied all pain. [*Id.*].

He was also seen on September 22, 2015 for complaints related to his bowel movements and was referred for a follow-up appointment with a Mid-Level Practitioner. [R. 15-2 at p. 9]. On October 19, 2015, Johnson had a follow-up exam, during which a reported that he had had a headache since the September 6 assault. [R. 15-2 at p. 13]. He denied nausea and vomiting, but reported that he sometimes has blurry vision when he reads. [*Id.*]. He was prescribed 800mg of ibuprofen to be taken three times daily as needed and it was recommended that he purchase loratadine (an antihistamine) from the inmate commissary to help with allergy-related symptoms. [*Id.* at p. 13-15].

In his Response, Johnson does not deny that he received the medical treatment reflected in his medical records. Rather, he simply re-states his allegation that he was "refused medical treatment for days." [R. 17 at p. 7]. However, in response to a motion for summary judgment, Johnson has an obligation to "come forward with some probative evidence to support [his] claim." *Lansing Dairy, Inc.,* 39 F.3d at 1347. This he has failed to do. Rather, the evidence submitted by

Defendants establishes that, after the September 6 assault, Johnson was examined and received medical treatment for his injuries. Where a prisoner has been examined and treatment provided but the prisoner merely disagrees with the course of care determined by his treating physician in the exercise of his medical judgment, his claim sounds in state tort law – it does not state a viable claim of deliberate indifference under the Eighth Amendment. *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). *See also Durham v. Nu'Man*, 97 F. 3d 862, 868-69 (6th Cir. 1996); *Brooks v. Celeste*, 39 F.3d 125, 128 29 (6th Cir. 1994). Even "[w]hen a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." *Comstock v. McCrary*, 273 F. 3d 693, 703 (6th Cir. 2001).

Thus, while Johnson may not have agreed with the adequacy of the treatment provided by Burchett, she clearly provided him medical attention and treatment. Accordingly, he has failed to state a claim for an Eighth Amendment violation. *See Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004) ("[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law.").

### D.     Qualified Immunity

Defendants have further argued that, as no constitutional violation has occurred, they are entitled to qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). When evaluating official immunity claims, the Sixth Circuit

9

applies the following three-part test: "First, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999)(citation omitted).

The Court has concluded above that no Eighth Amendment violations occurred. Thus, Defendants are entitled to qualified immunity.

### E. Conclusion

For all of the reasons set forth above, the Court finds that Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment [R. 15] will be granted and Johnson's Complaint [R. 1] will be dismissed.

Accordingly, **IT IS HEREBY ORDERED** as follows:

1. The Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment [Record No. 15] is **GRANTED**.

2. Johnson's Complaint [R. 1] is **DISMISSED WITH PREJUDICE**.

3. The Court will enter a Judgment contemporaneously with this opinion.

4. This action is **DISMISSED** and **STRICKEN** from the Court's docket.

Dated March 20, 2018.



KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY